THE PRESIDENT, DIRECTORS AND COMPANY OF THE FARMERS AND MECHANICS' BANK OF MICHIGAN *v.* THE PRESIDENT, DIRECTORS AND COMPANY OF THE TROY CITY BANK.

A judgment will not be reversed, on error, because no warrant of attorney authorizing the prosecution of the suit appears in the record, even where the plaintiff below was a corporation.

The practice of giving, or filing such warrants of attorney has never prevailed in this state.

On plea of general issue to an action by a corporation, the plaintiffs must prove their corporate existence in the same manner as though *nul tiel corporation* were pleaded.

Where it was assigned for error, that the plaintiffs below, who sued as a foreign corporation, did not prove themselves such by legal and competent evidence, and, their charter not being set forth in the bill of exceptions, the Court was unable to determine whether the evidence, (which was an exemplified copy of their charter, and proof of acts of *user* under it,) was sufficient or not; it was *held*, that, in support of the judgment, the evidence would be presumed sufficient.

So much of the "act to organize and regulate banking associations," (S. L. 1837, p. 76,) as purports to confer corporate rights upon the associations organized under its provisions, being unconstitutional and void, (*Green* v. *Graves*, ante 351,) such associations are not *monied corporations;* and, therefore, are not within the provision of the safety fund act, (S. L. 1836, p. 165, § 31,) which prohibits such corporations from issuing their bills or notes, unless the same be made payable on demand without interest.

*Quere*, whether a bill of exchange, drawn by an association organized under the general banking law, acting as a corporation, could be treated as legal and valid, and an action maintained upon it against the acceptors.

A bill of exchange directed to "*John A. Welles, Cashier Farmers and Mechanics' Bank of Michigan*," and accepted by writing across the face thereof, "*Accepted, John A. Welles, Cashier*," is drawn upon, and accepted by the bank, and not by Welles in his individual capacity.

The extent of the general powers of the cashier of a bank, is a question of law, and not of fact; and a charge is erroneous, which refers it to the jury to determine whether a cashier, as such, had power to accept certain bills for the bank.

The cashier of a bank has no power to accept bills of exchange, on behalf of the bank, for the accommodation, merely, of the drawers; and the holder, with notice, of bills so accepted, cannot recover against the bank.

It seems that persons dealing with a bank, are presumed to know the extent of the general powers of a cashier.

ERROR to Wayne Circuit Court. This was an action of assumpsit, brought by the defendants in error, against the plaintiffs in error, as acceptors of two bills of exchange, in all respects alike, of each of which the following is a copy:

"$6000.        Farmers' Bank of Homer, Aug. 5, 1838.

"Four months after date, pay to the order of S. K. Stowe, at the Troy City Bank, six thousand dollars.

(Signed,)        "*A. Finch, Jr.* Cash."

"To John A. Welles,

Cashier Farmers and Mechanics' Bank of Michigan."
(Endorsed) "*S. K. Stowe.*"    Across the face of each bill was written: "Accepted, *John A. Welles,* Cashier."

The declaration contained two special counts upon each

bill, and also the common money counts.   The plea was the general issue.   The cause was tried before the Hon. Geo. Morell, Presiding Judge, at the May term, 1841, of the Circuit Court.

It appeared from the bill of exceptions in the case, that, on the trial, the plaintiffs below, to prove that they were a corporation, read in evidence a certified copy of their charter, (which, however, was not set forth in the bill of exceptions,) and called a witness, who was asked whether he was acquainted with acts of *user* on the part of the plaintiffs below, under their charter.   To this question the counsel for the defendants below objected, on the ground that it was incompetent for the plaintiffs below to prove such acts of *user* until they had shown a compliance with the conditions and requirements which the charter prescribed for their organization under it.   This objection was overruled; and the witness testified that he had been acquainted with the corporation called the Troy City Bank, ever since 1833; that it had had its banking house in the city of Troy, in the state of New York, ever since that time, and had been doing a regular banking business, —had its Cashier, President, Directors, &c.—and that no' other bank of that name ever existed in that city.

It was admitted that the Farmers' Bank of Homer was a banking institution, organized and in operation under the general banking law of this state.

The plaintiffs below proved the endorsement of the bills to them by the payee; that the acceptances written across the face of the bills, were in the hand writing of John A. Welles; and that he was cashier of the defendants below at the time when they were made: they then read the bills in evidence, and rested their case.

The defendants below moved the court to nonsuit the plaintiffs, on the ground that they had not proved them-

selves a corporation by legal and sufficient evidence. The Court overruled the motion: to which decision the defendants below excepted.

The defendants below introduced evidence in defence tending to prove that the bills of exchange were accepted by Welles, as their cashier, without consideration, and solely for the accommodation of the drawers, and that this was known to the plaintiffs below when they received them; that the acceptances were made by Welles, without the knowledge of, and without authority from the directors of the Farmers and Mechanics' Bank of Michigan, (the defendants below ;) and that said directors never approved, recognized, or adopted the acceptances as their own.

Rebutting evidence was introduced by the plaintiffs below, tending to prove a subsequent recognition, and adoption, by said directors, of the act of Welles in accepting the bills.

The evidence being closed, the Court charged the jury, among other things, that the proper construction, upon their face, of the bills of exchange, was, that the defendants below, through their agent, John A. Welles, as their cashier, accepted them ;—that the legal intendment was, that the acceptances came within the delegated power of Welles, as cashier ;—that *prima facie* they did so, because the law presumes that the cashier acts within the limits of his delegated power until the contrary is shown.

The Court further charged, that, if the jury should be of opinion that the acceptances were made by Welles in his individual capacity, they would find a verdict for the defendants below ;—that, if he accepted on behalf of the bank, of which he was cashier, and if such an act came within his general authority or power as cashier, then they would find for the plaintiffs below; and if it was not within his general power, then, if the directors of the said

bank recognized, adopted, or approved of the act of Welles, in this particular, the plaintiffs below were entitled to their verdict;—otherwise not.

The counsel for the defendants below, requested the Court further to charge the jury, that, if they believed that the drafts were drawn by the Farmers Bank of Homer, for their own accommodation,—that Welles accepted them, as cashier, for the accommodation of the drawers,—that the plaintiffs had notice of these facts,—and that the directors of the Farmers and Mechanics' Bank never approved, recognized, or adopted, as their own, the acceptances of Welles,—then their verdict, in such case, must be for the defendants.

The Court refused so to charge, but instructed the jury that, if they believed that Welles had not the *general power* to accept, and that the directors of the bank never adopted, approved or recognized, as their own, the acceptances of Welles, their verdict must be for the defendants.

To the charge given by the Court, and to the refusal of the Court to charge as requested, the defendants below excepted; and, a bill of exceptions having been tendered and signed, removed the cause into this Court by writ of error.

Several errors were assigned : such as were considered by the Court, sufficiently appear in the opinion.

*T. Romeyn* and *H. N. Walker,* for the plaintiffs in error.

The bills declared on were the acceptances of Welles, and not of the Farmers and Mechanics' Bank.   Story on Bills, § 76; Bayley on Bills, 70, 71; Chitty on Bills, 33, 34; Story on Ag. § 155; *Leadbitter* v. *Farrow,* 5 Maule & Selw. 345; *Ducarr* v. *Gill,* 4 Car. & Payne, 121; *Thomas* v. *Bishop,* 2 Str. 955; S. C. Cas. Temp. Hardw. 1; *Barker* v. *Mechanics' Insurance Co.* 3 Wend. R. 98.

It was incumbent on the plaintiffs below, to show that Welles had authority to accept the bills of exchange, so as to bind the defendants by his act. 2 Stark. Ev. 31; Id. 144; 3 T. R. 757; 4 Bing. 149; S. C. 13 E. C. L. R. 383; Chitty on Bills, 28, 29.

The general power of the cashier of the defendants below, did not extend to the acceptance of bills for the accommodation of others; and any contract of his beyond the scope of his duties as cashier, was not binding on the defendants below. The following authorities show what are the general powers and duties of a cashier. Ang. & Ames on Corp. 172, 173; Story on Ag. 94, 95, 103, 104, 105; *Fleckner* v. *Bank United States*, 8 Wheat. R. 360; *United States Bank* v. *Dunn*, 6 Pet. R. 56, 59; *Bank of Metropolis* v. *Jones*, 8 Pet. R. 13, 16; *Hallowell and Augusta Bank* v. *Hamlin*, 14 Mass. R. 178, 181. These authorities all show that a cashier has no right to *create* new liabilities of the bank, of an extraordinary character, and without any consideration.

The extent of Welles' authority was known to the plaintiffs below. Persons dealing with corporations are bound to know the extent of their powers. This is especially so with regard to agents or officers of corporations. *Schimmilpennick* v. *Bayard*, 1 Pet. R. 290; *Hayden* v. *Middlesex Turnpike Co.* 10 Mass. R. 397, 403; *Salem Bank* v. *Gloucester Bank*, 17 Mass. R. 29; *Wyman* v. *Hallowell and Augusta Bank*, 14 Mass. R. 58, 63; *Snow* v. *Perry*, 9 Pick. R. 542; 3 T. R. 757; *Seton* v. *Slade*, 7 Ves. R. 276; *Gibson* v. *Colt*, 7 John. R. 390; 15 John. R. 44; Smith's Mer. Law, 59; Comyn on Contr. 240; Chitty on Contr. 57; Theob. Pr. and Ag. 245; Paley on Ag. 199, 200, 201, and notes.

The Court erred in submitting to the jury, without instructions, the question whether the acceptance of the drafts was within the general powers of Welles, the cash-

ier of the defendants below.    This was strictly a question
of law.    Story on Ag. 94, 95; 4 John R. 387, 389.

*James F. Joy*, for the defendants in error.

The bills were, on their face, drawn upon, and accep-
ted by the defendants below.    Story on Ag. 143, 144,
and cases there cited ; 4 Pet. Cond. R. 670.

Welles, as cashier, had power to bind the Farmers and
Mechanics' Bank by the acceptances.    Story on Ag. 103,
18, 19, 115 to 121; 5 Wheat. 326, 327 ; 1 Pet. R. 46, 70;
8 Wheat. 360 ; 6 Cow. 460 ; 12 Serg. & Rawle, 260; 3
Mason's R. 505 ; 15 John. R. 52 ; 2 Pick. R. 14; 5 Ma-
son's R. 189; 15 Mass. R. 340.    The law presumes that
every man, in his official capacity, does his duty.    1 Pet.
R. 70 ; 21 Pick. R. 490 ; 8 Pick. R. 59, 60 ; 6 Paige, 503.

[The arguments of counsel are given only on a few of
the more important points decided by the Court.    Several
other important questions arose, some of them out of facts
in the case, which the decision of the Court renders it un-
necessary to set forth in this report, and were very elabo-
rately argued by counsel.]

WHIPPLE, J. delivered the opinion of the Court.

The questions arising upon the record will be considered
in the order in which they were presented to the Court, in
the argument of the counsel for the plaintiffs in error.

1. It is alleged as ground of error, that there is no au-
thority in the record from the plaintiffs below, authorizing
the institution or prosecution of this suit.

Anciently, attorneys were appointed orally in court,
but were afterwards appointed out of court by warrant.
It would seem, however, from an examination of the an-
cient authorities, that the " default of a warrant of attor-
ney was error."    1 Com. Dig. 574    But, for avoiding
error, it is sufficient if the warrant be entered before judg-
ment, or before writ of error brought.    Id. 747.    It was

always deemed sufficient that the authority to the attorney be given by writing upon the process, that such an one shall be his attorney.   1 Sid. 31;  1 Com. Dig. 746. And if the attorney appear, the court does not inquire whether he had a good authority.   1 Salk. 86.   It is also laid down that it is sufficient to say, that *A venit per B attornatum suum*.   1 Com. Dig. 746.   Our statute requires that the name of an attorney should be endorsed upon every original writ; and the writ, by the statute, constitutes a part of the record.   This endorsement, taken in connection with the fact that the words, "the plaintiff, by his attorney, comes," &c. appear in the record, is, we think, sufficient.   The practice of giving, entering, and filing warrants of attorney, has never prevailed in this state. All that has ever been done in practice was to add the usual memorandum at the bottom of the declaration.   This question was raised in the case of *Osborn* v. *Bank of the. United States*, 9 Wheat. R.738 , and the Supreme Court of the United States decided, that the want of a warrant of attorney constituted no ground for reversing the decree in that case, although a corporation was the plaintiff in the court below.   I am inclined, therefore, for the reasons already given, and upon the reasoning of the Chief Justice in that case, not to consider the want of a warrant of attorney as error.

2.  The second error assigned is, that the plaintiffs below did not prove themselves a corporation by legal and sufficient evidence.   Inasmuch as the act incorporating them does not appear in the record in this case, it is impossible to say whether the proof was sufficient or not.   The ground relied upon by the plaintiffs in error, in argument, was, that a corporation created by a statute, which requires certain acts to be done before it can be considered *in esse*, must show such acts to have been done, in order to establish its existence; and, hence, that the plaintiffs were

bound to prove that they had complied with the conditions which their charter prescribed as precedent to their organization. It is well settled that, under the plea of the general issue, a corporation must prove all it would be required to prove under the plea of *nul tiel corporation.* If, therefore, under the latter plea, the plaintiffs would have been required to prove a compliance with certain conditions prescribed in the act of incorporation as precedent to their organization, it is clear that, under the general issue, the same measure of proof would be required. We have no doubt that the rule was correctly stated by counsel; but, whether the act incorporating the plaintiffs below would justify its application, we cannot know, as the act itself is not before us. It may be that the plaintiffs were declared a corporation by the act, and that nothing was required to be done *in futuro* to entitle them to corporate powers. If so, the proof upon the trial was sufficient to establish the corporate existence of the plaintiffs. We are not to presume that the evidence was insufficient. On the contrary, every reasonable presumption is to be made in support of the judgment. The second allegation of error, therefore, is not well taken.

3. The third error assigned, is, that the bills of exchange declared upon were illegal and void, having been issued in contravention of the safety fund act, which declares that no monied corporation subject to it "shall issue any bill or note of said corporation, unless the same shall be made payable on demand and without interest." S. L. 1836, 165, § 31. It was admitted on the argument, and appears by the record, that the Bank of Homer was a banking institution organized under the general banking law of this state, and subject to the safety fund act. The importance of this question was appreciated by counsel on both sides, and it was fully and ably argued. But a difficulty is here interposed, not known to counsel at the

time the cause was argued, and which gives a new aspect to the question. I refer to a decision made by this Court, since the argument, declaring so much of the act under which the Bank of Homer was organized, as purported to confer corporate rights upon the associations formed under its provisions, unconstitutional and void. The restriction in the safety fund act applies solely to *monied corporations.* But the Bank of Homer was not legally a corporation, and, therefore, not a monied corporation; and, if not a monied *corporation,* then it was not subject to the restriction contained in the act.

It being settled that the Bank of Homer was not a monied corporation, and of consequence not subject to the provisions of the safety fund act, a question of great difficulty and importance might now arise, viz : whether the bills of exchange declared upon could be treated as legal and valid, and a suit be maintained upon them. The magnitude of the interests involved in the decision of such a question, would preclude us from expressing an opinion upon it, until counsel be heard, and time taken for careful and deliberate examination. If the judgment of the Court in the present case depended upon the decision of that question, we should reserve it for argument. As it is, we shall withhold the expression of any opinion upon it.

4. The fourth error assigned is, that the bills declared on are the acceptances of John A. Welles, and not of the President, Directors and Company of the Farmers and Mechanics' Bank of Michigan ; and, therefore, that the Court erred in charging the jury that the proper construction of them upon their face was, "that the defendants, [below,] through their agent, John A. Welles, accepted the drafts in question."

The general rule in cases of contract is, that an agent, in executing his authority, must " do it in his name, who gives the authority." In other words, "to bind the prin-

cipal, and to make it his contract, it must purport on its face to be the contract of the principal, and his name must be inserted in it, and signed to it, and not merely the name of the agent, even though the latter be described as agent in the instrument." Story on Agency, § 147.   This rule is adhered to with great strictness, in relation to the mode of executing instruments under seal.   With respect, however, to unsolemn instruments, especially commercial and maritime contracts, the rule has, in this country at least, been somewhat relaxed.   "In such cases, in furtherance of the public policy of encouraging trade, if it can, upon the whole instrument, be collected, that the true object and intent of it are to bind the principal, and not merely the agent, courts of justice will adopt that construction of it, however informally it may be expressed."   Id. § 154. An examination of the American cases confirms the proposition laid down by Judge *Story*, but I have in vain sought for an adjudged case in England, which gives support to the text.   The English courts seem to have adhered pertinaciously to the rule, that, to bind his principal by a contract in writing, the agent must sign the name of the principal to the instrument; and no exception is made in favor of that class of contracts called commercial or maritime.   And I think it may be well questioned whether sound policy would dictate to courts of justice the propriety of adopting the very liberal view which has been taken of this subject in some of the authorities referred to by the counsel for the defendants.   It may admit of great doubt, whether it would tend to encourage trade, to give countenance to the "loose and inartificial manner" in which commercial contracts are usually drawn up.   I do not mean to assert that in all cases, and under all circumstances, the rigid rules of construction adopted by the courts of common law in England, should be adhered to; yet I think it would be safer to adhere to these rules, than

to adopt one so liberal in its terms, as to authorize courts of justice to indulge their fancy or caprice in giving a construction to contracts. The true rule may be thus stated: In cases where bills are drawn, accepted, or endorsed by an agent, if, from the nature of the contract and the terms of the instrument, it clearly appears that the party, by whom such bill is drawn, accepted, or endorsed, is an agent, and that he intended to bind his principal, he will be deemed to have contracted for such principal; but the terms of the instrument must be so explicit as to repel the inference that the agent intended to bind himself.

But, before applying this rule to the bills in question, it may not be improper to refer to a few cases decided in England and this country, for the purpose of showing that we do not intend to violate the spirit of the decisions to be found in the English reports, while it will appear that we are clearly within the rule laid down in the American authorities. In the case of *Thomas* v. *Bishop,* 2 Strange, 955, the bill was in the following form: "At thirty days sight, pay to J. S. or order £200, value received of him, and place the same to account of the *York Buildings Company,* as per advice from Charles Mildmay. To Mr. Humphrey Bishop, cashier of the *York Buildings Company,* at their house in Winchester street, London. Accepted 13 June, 1732, per H. Bishop." An action having been brought against the defendant on his acceptance, he proved upon the trial that the letter of advice was addressed to the Company; and that, the bill having been brought to their house, he was ordered to accept it, which he did in the same manner as he had accepted other bills. The jury, however, were directed to find for the plaintiff, which they did accordingly. Upon motion for a new trial, the court held that the direction was right, for the reason that the bill, on its face, imported to be drawn on the defendant, and it was accepted by him *generally,* and not as

servant of the Company.   The court further held, that as
the action was by an endorsee, it would be of dangerous
consequence to trade, to admit of evidence arising from
extrinsic circumstances—as the letter of advice.

In *Leadbitter* v. *Farrow*, 5 Maule & Selw. 345, the bill
was as follows: "£50.   Hexham, June 8, 1815.   Forty
days after date, pay to the order of Mr. Thomas Lead-
bitter fifty pounds, value received, which place to the ac-
count of the Durham Bank, as advised.   Messrs. Weth-
erell, Stokes and others, Bankers, London." (Signed)
" Christopher Farrow."   An action being brought against
Farrow, he was held liable; Lord *Ellenborough* saying,
that it was an universal rule, that a man who puts his
name to a bill of exchange, thereby makes himself per-
sonally liable, unless he states upon the face of the bill
that he subscribes it for another, or by procuration of an-
other.   In *Barker* v. *Mechanics' Fire Insurance Co. of the
city of New York*, 3 Wend. R. 94, the note was in the fol-
lowing form: " I, John Franklin, President of the Me-
chanics' Fire Insurance Co. promise to pay to the order of
the Life and Fire Insurance Company, on demand, the
sum of $3172.40, with interest, for value rec'd.   John
Franklin."   It was decided that Franklin was liable, as
it was his note and not the note of the company.   In *Ballou*
v. *Talbot*, 16 Mass. R. 461, the note was as follows: "I,
the subscriber, treasurer of the Dorchester Turnpike Com-
pany, for value rec'd, promise," &c. and it was signed " A.
B. Treasurer of the Dorchester Turnpike Co."   It was held
to be the note of the corporation.   In *The Mechanics' Bank
of Alexandria* v. *The Bank of Columbia*, 4 Pet. Cond. R.
666, it appears that the defendants in error, brought as-
sumpsit against the plaintiffs in error, on a check in the
following form: " $10,000.   Mechanics' Bank of Alex-
andria, June 25, 1817.   Cashier of the Bank of Colum-
bia, pay to the order of P. H. Minor, Esq. ten thousand

dollars. Wm. Patton, Jr." Upon the trial of the cause testimony was offered and received, going to show that the check was drawn under such circumstances, and in such a manner, as justified the plaintiff in considering it as an official check; although it was insisted by the counsel on the part of the defendants, that the character of the check could only be decided by the check itself, and that no parol testimony could be received to explain the same. A verdict and judgment having been rendered against the defendants, the cause was removed to the Supreme Court of the United States, which affirmed the judgment below. Mr. Justice *Johnson,* who delivered the opinion of the Court, considered "that the evidence, on the face of the bill, predominated in favor of its being a bank transaction." I might here refer to numerous other cases, showing the course of decision upon a question of real difficulty, and in respect to which judges have entertained very different opinions; but enough have been cited to answer the purpose I have in view. Let us now examine these cases with reference to the case at bar.

In the case from 2 Strange, it is to be observed, that the bill was signed by the defendant *generally;* and in this particular it differs somewhat from the present case, the acceptance being by "John A. Welles, Cashier." It may be said the acceptance by Welles was *general,* notwithstanding the addition of the word "Cashier." But, whether such addition is, or is not, to give character to the instrument, must, I think, be determined from what appears upon the face of the bill, and other circumstances to which I shall presently allude.

In the case from 5 Maule & Selw. it is difficult to perceive how the drawer could escape from the legal consequences of subscribing his name *generally* to the bill. The mere circumstance that the amount specified in the bill was directed to be placed to the account of the bank,

could scarcely be deemed sufficient to overthrow the strong legal presumption arising from his having signed the bill *generally*.   In the case from 3 Wend. the note was signed generally, and words "President of the Mechanics' Fire Insurance Company," were clearly only descriptive of the person of the maker.   I think the present case strikingly analogous to that reported in 16 Mass. R.   The words, " accepted, John A. Welles, Cashier," are equivalent to the words, " I, John A. Welles, Cashier of the Farmers and Mechanics' Bank of Michigan, accept the within bill."   The acceptance raises such implied promise to pay, and that promise is as complete and full, as though Welles had endorsed it in full on the bill.

It is difficult, if not impossible, to reconcile the decision of the Supreme Court of the United States, in the case of the *Bank of Alexandria* v. *The Bank of Columbia,* with principles which have been universally acknowledged, or with any adjudged case which has fallen under my observation.   The only evidence on the face of the check, from which it might be inferred that it was a bank transaction, is, the circumstance that it purports to have been dated at the Mechanics' Bank.   How the learned judge, who delivered the opinion of the court, could have come to the conclusion, " that the evidence on the face of the bill predominated in favor of its being a bank transaction," is to me inconceivable.   We cannot recognize this case as authority, without disregarding the uniform course of decisions both in England and in this country.   If the evidence received upon the trial was admissible, it might have justified the verdict.   But how could evidence be admitted without violating the familiar rule, that matter *dehors* the instrument, could not be received to change its legal effect ?   This must be determined by what appears on the face of it; and I think it too clear for argument, that the check in question was, upon its face, the individual

check of Patton, and that this legal presumption could not be rebutted · by extrinsic proof, to show that it was the check of the bank.

But that case differs in many essential particulars from the one before us, as the check was signed generally by Patton, and, according to the view I take of it, contained on its face no evidence of its being the check of the bank.

Let me now test the bills declared upon in the present case by the rule I had occasion to lay down in a former part of this opinion. They are addressed to John A. Welles, Cashier of the Farmers and Mechanics' Bank of Michigan, and accepted by him, with the addition of the word " Cashier," underwritten. It is admitted that the true and best mode was not adopted, to show that the ac-' ceptance was intended to be that of the defendants below. This would have been most efficiently accomplished by signing the name of the bank to the acceptance, with the addition of the words, " by John A. Welles, Cashier." But this was not done; and the question to be determined is, whether, from the nature of the contract, and the form of the instrument, it may not, without doing violence to any well established principle of law, be deemed, nevertheless, the acceptance of the bank, and not the individual acceptance of Welles. The contract is one known and recognized by the law merchant; it is the acceptance of a bill of exchange. But what is implied by such acceptance? Clearly a promise by the acceptor to pay the bill at maturity. The acceptor is primarily liable; he is the principal debtor; and his acceptance is an admission that he has funds in his hands to meet the bill. What, in the next place, is the form of the bill? It purports to have been drawn by Finch, Cashier of the Bank of Homer, and is addressed to Welles, Cashier of the Farmers and Mechanics' Bank, by whom it was accepted in the manner already stated. Can it then be fairly inferred that the

acceptance thus made was intended to be the acceptance of the bank? We think it can, and that while this construction, which we deem the most just and natural one, does not conflict with any of the English cases that have been cited, it is clearly sustained by the weight of American authority. We feel confident that this construction carries into effect the intention of the original parties to the bill, and that that intention is sufficiently expressed on the face of the instrument, to be clearly apparent to any person to whom it might be negotiated.

No evidence appears to have been adduced on the trial, showing the custom of banks, as to the mode of making themselves parties to negotiable instruments ; and it is not, perhaps, competent for us, without such proof, to take notice of such custom, or to give it any consideration and effect in construing the bills in this case. But, knowing, as we do, that it is the uniform and universal usage of banks in this country, to draw, accept, and endorse bills through their cashiers, and that this is done by the signature of the cashier, with the mere addition to his name of the word "cashier," we should have come to a different conclusion, if compelled to do so, with great reluctance ; and are glad to find ourselves able, after an examination of the authorities, to give a construction to the bills in this case, consistent with that which instruments so executed universally receive in the commercial world.

It will follow, then, that there was no error by the Court, in charging the jury, "that the defendants, by their agent, John A. Welles, accepted the bills in question."

6. I now proceed to the consideration of the sixth error assigned. The Court below were asked to instruct the jury, that, "if they believed that the drafts were drawn by the Farmers' Bank of Homer for their own accommodation,—that Welles accepted them as cashier for the accommodation of the drawers,—that the plaintiffs had

notice of these facts,—and that the directors of the Farmers and Mechanics' Bank never approved, recognized or adopted as their own, the acceptances of Welles,—then their verdict must be for the defendants." The Court refused so to charge the jury, but charged that, "if the jury believed that Welles had not the *general* power to accept the drafts, and that the directors of the bank never adopted, approved, or recognized as their own, the acceptances of Welles, then their verdict must be for the defendants." I think the instruction asked for was pertinent, and justified by the facts elicited on the trial. That instruction was not answered by the very general charge given by the Court. No instruction was asked respecting the *general* power of a cashier to accept bills of exchange; but the instruction requested was specific, respecting the power of the cashier to accept the *particular* bills, which constituted the subject matter of the suit. In any event, the charge was erroneous, as it submitted questions of law for the decision of the jury. Whether the cashier of the Farmers and Mechanics' Bank possessed the general power to accept bills, was a question of law, and not of fact.

But it was contended by the counsel for the defendants in error, that, admitting the charge to have been erroneous in this respect, yet, if it appear from the whole record in the case, that if the instruction as prayed for had been actually given, the verdict must have been for the plaintiffs below, this Court will not reverse the judgment. It is well settled, that, if an instruction is asked for, which, though pertinent, is immaterial, and could in no respect influence the jury in the decision of the case, the refusal to give the instruction will constitute no ground of error. But, to sustain the views urged by counsel in argument, it must be assumed that the power of a cashier extends to the acceptance of mere accommodation bills. This

assumption is too broad; it covers too much ground. I am not prepared to admit that the cashier of the Farmers and Mechanics' Bank possesses the power, in all cases, to draw or accept bills. That power is, and must be, limited to the drawing and accepting of bills in the usual and ordinary course of the business of the bank;—in other words, in the legitimate exercise of the powers conferred upon the bank by its charter. It is very true that the cashier may abuse his trust, by accepting bills, and that the bank may be made liable by such acceptances; but the person who seeks to recover on such an acceptance, must be an innocent, *bona fide* holder, not affected by notice, actual or constructive, that in accepting the bill the cashier exceeded his powers. To establish a contrary doctrine would be destructive, as well of the rights of the bank as of the public, and cannot be justified upon principles of either policy or justice. The plaintiffs below are supposed to know the extent of the powers of a cashier. Those powers are defined and limited by law; and if, with a full knowledge on their part, of the entire want of authority in Welles to accept the bills in question, they advanced money upon them, I know of no principle of law, or ethics, that would authorize a recovery against the bank. But, in this case, there was something more than mere constructive notice. There was evidence tending to show that the plaintiffs below were informed that Welles accepted the bills for the accommodation of the drawer. If such was the fact, Welles had no authority to bind the bank. In this light the case should have been presented to the jury; and the failure so to present it, may have worked injustice to the defendants below. It may be that the verdict would have been for the defendants.

I have avoided the consideration of the question raised by the counsel respecting the effect of a recognition by the directors of the acts of Welles in accepting the bills

in question, or whether a recognition by the directors would bind the bank, because it is not necessary to the decision of the cause that the judgment of this Court should be passed upon that question. It is sufficient to authorize the reversal of the judgment below, that the Court failed in doing its whole duty, by not presenting the case to the jury in the manner insisted upon by the counsel for the plaintiffs in error. We think the Court should have decided upon the power of the cashier to accept the bills in question, upon the supposition that they were mere accommodation acceptances, and not referred that question to the jury, in connection with the question of fact; for, admitting the authority of the directors to ratify the act of Welles, whether there was a ratification or not, is a question of fact to be referred to the jury, guided by proper instructions as to what acts, on the part of the directors, would amount to a ratification.

The judgment of the Court below must, therefore, be reversed, and the cause remanded, &c.

*Judgment reversed.*