Common Pleas Court of Lucas County.

SMITH, ET AL. V. FULTON, ET AL.

Decided August 5, 1933.

MARTIN, J.

In connection with the liquidation of the closed banks in Toledo, quite naturally there has arisen the necessity of finding and fixing the rights of the many persons who have given mortgages on their properties to some one or more of these closed banks.

Some six or more cases were presented to the court, each representative of a class but all involving the question of the right to off-set the bank deposit of the mortgagor against his mortgage indebtedness.

After the hearing of these cases it developed that in some of the banks certain mortgages had been grouped into trusts designated in each instance either by number or by name, and that against these mortgages so grouped there had been issued and sold certain certificates of participation. Certain holders of these certificates were given the privilege of intervening in the cases under consideration, so additional hearings were necessary. To the court it seemed desirable to decide all of these cases in one opinion, so court action in that particular was deferred awaiting briefs, the last brief being filed just a few days ago.

In this connection I want to commend counsel representing all of the parties engaged in this litigaton, for the very careful manner in which they have briefed the questions involved, and particular commendation is due Mr. Nolan Boggs, representing the Banking Department, in that he has fully recognized the fact that the Superintendent of Banks is in a position where he necessarily represents all classes, so that Mr. Boggs' brief was in no sense partisan but was so prepared as to advise the court of all the hold-

ings upon the questions involved, regardless of whether such holdings were for or against any propositions that might be involved in these cases, all of which made this brief of particular value to the court in determining these questions.

As indicated above, all these cases involve the right of set-off. The doctrine of set-off arose in the first instance out of necessity and in deference to the demands of equity and good conscience. That the demands of parties mutually indebted should be set off against each other and only the balance recovered, was very early recognized by courts of equity as being absolutely necessary to the proper administration of justice, and following the practice of this principle by courts of chancery, general statutes have been enacted in most of the states, including Ohio, securing this right of set-off to parties standing in the relation of debtor and creditor and between whom there are cross demands, leaving of course unimpaired the right of a court of equity to apply the doctrine of equitable set-off—that is, the right to grant relief in instances where equity and good conscience seem to demand it, and where a strict construction of the statutory law would not permit. The statutory right and the equitable right both maintain in Ohio.

It would serve no good purpose to review the decisions either of Ohio or of other states in the union on the basic principle of set-off. It may be admitted that there is disagreement between the laws and the decisions of the various states, but so far as Ohio is concerned, we have statutory off-sets, and by decision of the courts, a generous measure of equitable off-sets. Further than this, the doctrine of set-off, both legal and equitable in Ohio, applies as between a bank and its customers with the same force and effect as between debtors and creditors generally. These rights as between a bank and its customers, are reciprocal.

The law gives to a bank a general lien upon the deposits, papers, securities, etc. of its debtor in its possession. Also the right to set-off against deposits, claims owing to them by depositors. And depositors on the other hand are given reciprocal rights in that they may have their deposits applied on the payment of their notes upon insolvency of the

bank.   In other words, this right of set-off in favor of a depositor being available against the bank while the bank is solvent, is not affected by the insolvency of the bank but continues to be effective thereafter.   5 Ohio Jurisprudence — (Banks) Sections 96 and 136.

In that connection however, it ought to be borne in mind that this reciprocal right of set-off as between the bank and its customers is fixed and determined as of the time the bank becomes insolvent, or possibly when its insolvency is recognized by the closing of its doors and the taking possession of it by the proper authorities for liquidation, so that a person indebted to a bank may not be permitted, as a matter of right, to set-off against his indebtedness, a deposit which he had acquired by assignment after the closing of the bank.   It is of course possible for him to do so by agreement with the Banking Department by way of compromise of his indebtedness but not by way of set-off as a matter of legal right.

This very general statement of the law seemed to me to be necessary to make understandable the opinion of the court upon the issues that have been presented in the representative cases which were heard by the court.   In all of these cases off-sets are sought by the mortgage debtor, and in all of the cases the mortgages in question have either been sold and conveyed to some third person by the bank or in some fashion encumbered by some interdepartmental transfer of such mortgage from one department of the bank to another department, and the subsequent issuance by the bank of certificates of participation, such certificates being a charge upon the income, both principal and interest, of these mortgages.

Necessarily therefore, the inquiry is, are these transactions of such a character as to deprive the mortgage debtor of his right of off-set?   In other words, have any equities of third persons intervened by virtue of these transactions, and if so are they of such force as to defeat the right of off-set of the mortgage debtor?

In the case of *Smith* v. *Fulton,* No. 134031, the plaintiff alleges that she was indebted to The Ohio Savings Bank in the amount of $1610.00 on July 30, 1931; that the note and

mortgage securing this indebtedness was due and payable on February 28, 1931; that on July 30, 1931, the bank assigned the note and mortgage to the defendant, The Metropolitan Life Insurance Company without notice to or the consent of the plaintiff.

Plaintiff alleges further that the Ohio Savings Bank was indebted to her at the time of the closing of the bank, August 15, 1931 in an amount very greatly in excess of the amount due upon the mortgage; that she has been denied the right to have any portion of her deposit credited on this note and mortgage. Other allegations appear in the petition which do not become important in determining the basic question involved in the case.

The allegations in the petition were proven practically as alleged at the hearing of the case.

The inquiry is, is the plaintiff entitled to this off-set? This court is clearly of the opinion that she is entitled to the off-set. The bank, of course, had a lawful right to dispose of the note and mortgage of the plaintiff, and undoubtedly, if the note and mortgage in question had not matured at the time of their assignment, the plaintiff would have been defeated in her right of off-set. However, it is undoubtedly the law in Ohio that the assignment of a promissory note, after maturity, is subject to set-off by the maker.

In the case of *Baker* v. *Kinsey*, 41 O. S. 403, the court says:

"The holder of a promissory note who took it after maturity, holds it subject to every objection, including equitable set-off to which it was subject in the hands of his assignor."

Not only has this decision not been disturbed at any time by the courts of the state, but the Court of Appeals went even further than that in the case of *Massachusetts Bonding & Life Insurance Company* v. *Fish et al* in 18 C. C. N. S. p. 534, by holding that where a note was assigned by a bank after maturity and the makers of the note had no notice of such assignment and continued to make deposits in the bank which later became insolvent, not only were the deposits made before the assignment allowed to be off-set but de-

posits made after the assignment was made, were also permitted to be set-off against the amount due upon the note.

The Metropolitan Life Insurance Company, who purchased the note and mortgage in the case at bar after maturity, were of course bound to know that the note of the plaintiff was subject to every objection, including that of equitable set-off, to which it was subject in the hands of the assignor, the Ohio Savings Bank & Trust Company.

The court is informed that there were a very considerable number of mortgages sold by one or more of the closed banks under similar circumstances, and this rule of law will apply to all of them. It would seem that the only possible difference in the facts between this case and other cases if a similar character would lie in the matter of notice to the maker or in the matter of some conduct on the part of the maker that could really be said to have the effect of ratifying the assignment.

Would the payment of principal and interest to the assignee of the mortgage assigned under such circumstances, have the effect of ratifying such assignment and constitute a consent thereto? This court is of the opinion that it would not, if such payment of principal and interest were made to save the maker a law suit and preserve his property. It is possible of course that the circumstances in each particular case would have to be inquired into before determining that question, but in general we think the principle stated is correct.

The plaintiff in this case will therefore be decreed to be entitled to an equitable set-off against the note and mortgage, The Metropolitan Life Insurance Company being subrogated to the rights of the plaintiff in such sum as may be necessary to satisfy the note and mortgage, its surrender or cancellation ordered, together with such adjustment of interest payments as may be determined to be just and equitable. These are matter of computation upon the preparation of the journal entry to be approved by counsel, and the court will make an entry on the docket in accordance therewith.

The remaining cases, viz: *Kruse, Executor* v. *Fulton*, No. 131287, *Martin* v. *Fulton*, No. 132851, *Fryman* v. *Fulton*,

No. 130786, *Armin A. Suder* v. *Fulton,* No. 131711, and *Dellinger* v. *Fulton,* No. 129519, are all cases wherein the mortgage in each case found its way into some one or another of the several trusts set up either in the Ohio Bank or the Commercial Bank against which were issued participating certificates. While there seems to be some little difference in the words used in the creation of these so-called trusts, it appears to the court that this difference is largely one of words and that no substantial difference exists as between the several trusts. A discussion of one of these trusts therefore, will serve to explain the character of all of them.

The case of Fred H. Kruse, executor of the last will and testament of *James A. Belyea* v. *Fulton,* No. 131287, sets forth that the decedent Belyea had on deposit at the time of the closing of the Commercial Savings Bank and Trust Company, sums in various accounts totaling in the neighborhood of $2500.00; that at the same time Belyea was obligated to the Commercial Savings Bank upon a note and mortgage upon which there was then due, some $15,000.00 or more; that demand was made upon the superintendent of banks to off-set the deposits of the decedent against the mortgage; that the superintendent of banks refused and continues to refuse to make the off-set requested, so the plaintiff executor asks that the off-set be ordered by the court.

The testimony in the case tends to fairly prove the allegations in the petition and also shows additional matters which raise the real questions involved in all of these cases. It appears from the evidence that on or about the 1st day of February, 1930, the directors of the Commercial Savings Bank & Trust Company authorized the withdrawal from the files of the bank, of certain first mortgage notes and first mortgage deeds of a face value of $250,000.00. It authorized these notes and mortgages so to be withdrawn to be deposited in the trust department of the bank for the purpose of issuing against such notes and mortgages, certificates of participation not exceeding the amount of $250,-000.00.

It appears from the testimony that the declaration of trust issued in accordance with this action of the board of

directors provided that these notes and mortgages so deposited in the trust department were to remain under the absolute control, management and possession of the bank, with the privilege upon the part of the bank to withdraw from the trust department from time to time, any and all of such notes and mortgages, and substituting therefor cash or other notes and mortgages of like face value.

It appears further that in the declaration of trust there was authorized the issuance of certificates of participation, to mature in two years from the date of their issuance and to draw interest at the rate of 5% per annum, the principal and interest to be paid only from moneys collected on account of the principal and interest of the notes and bonds so deposited in the trust department. This declaration of trust was signed by the Commercial Savings Bank & Trust Company by G. E. Wise as vice president and F. E. Stewart as secretary, it nowhere appearing in the declaration of trust that the Commercial Savings Bank & Trust Company were acting as trustee.

The evidence further shows that there were issued against the notes and mortgages so set aside, certificates of participation in the amount of $250,000.00. These certificates of participation so recite, and also recite that as and when the Commercial Savings Bank & Trust Company receives payment of interest on said securities, and not otherwise, it will pay the interest accruing upon the securities; and that also at the time of the expiration of the certificate, that is to say, the due date, or as soon thereafter as sufficient funds have been collected on account of the notes and mortgages so held, the bank will pay to the registered holder his *pro rata* share of the funds so collected, but in no event more than the face value of the certificate.

It appears also from the evidence in the case, and this is true of all of the cases involving this same question, that there were no written endorsements placed on any of these notes and mortgages as required by Sections 8135 or 8136, General Code.

It likewise appeared in the evidence that the collections of the notes and mortgages in question were made by the mortgage loan department of the bank and not by the trust department.

It also appeared from the testimony that the mortgage above referred to was at the time of the closing of the bank, among those mortgages which were alleged to have been placed in trust to support the certificates of participation in question, and it is likewise true in all of these cases that the mortgages in question were in some one or the other of these so-called trusts.

Many other matters, most of them of trivial or inconsequential character, and all of them simply the necessary details attaching to the issuance of the participation certificates, are in evidence in this case. But whatever they are, the one question remains,—Is the plaintiff by reason thereof, deprived of his right of off-set? Has his note and mortgage changed hands? Has the bank to whom he mortgaged his property, disposed of his note and mortgage in the manner required by law? Is the bank no longer in full control of these instruments? These questions require an answer.

It must not be forgotten that the bank not only in the declaration of trust but in the certificates of participation, reserved to itself the title, possession, management, control, investment and reinvestment of all these notes and mortgages. The bank guarantees but one thing and that is to keep either money or notes in the amount of $250,000.00 segregated for the purpose of insuring to the certificate holder, the payment of his *pro rata* share of the collections it may be possible for the bank to make upon the notes and mortgages so segregated.

The bank does not guarantee payment beyond its ability to collect in the ordinary course of business. Neither does it guarantee that the mortgages may not be changed daily or even oftener. It says in effect, that whatever it is able to collect, or in other words, whatever it is obliged to take under the law in payment of these mortgages it will pass along to the certificate holder, and that he will get his *pro rata* share of the funds collected, and no more.

In addition to that, and to make it absolutely certain that the bank continues at all times to be the real owner of these notes and mortgages and that the real purpose of the alleged trust is to produce a revenue for the bank, the certificates recite that in no event is the holder to receive more

than the face value of the certificates, thus definitely re-serving to the bank whatever profit may result from the transaction.

I am not criticising the bank for the plan, for it is un-doubtedly a perfectly lawful thing to do, but I am simply seeking to demonstrate that after all is said and done, the bank as an entity created by charter received from the state of Ohio, is at all times the owner of an endowed with full title to those notes and mortgages; that it has their pos-session, management and control, and may shift, change and substitute with perfect freedom. Every bank created under the laws of Ohio, regardless of its departments, has but one legal entity. Some of its departments are created by the bank itself purely for convenience, while some are created as a matter of necessity because certain limitations are placed upon the banks in Ohio in the matter of the operation of their savings and trust departments, but the fact still exists that regardless of whether the bank has one or a dozen departments, it remains a single entity, and this fact is recognized by the laws and decisions of the courts of the state.

In some states there is a distinct separation of the funds and obligations of the various departments of the bank. Notably so in Massachusetts. In Connecticut it was gov-erned originally by charter, and there are two very inter-esting decisions in that state. One is the case of *Lippitt* v. *Thomas Loan & Trust Co.,* found in 88 Conn., p. 185, in which it was held that because the charter did not separate and distinguish the savings and commercial departments as independent branches, a borrower from one department might off-set his indebtedness with his deposit in another department.

The other case *Bennett* v. *City Bank & Trust Co.* found in 160 Atlantic, p. 80, the Supreme Court of Connecticut held just to the contrary because of a peculiar statute definitely separating the two departments and requiring their trans-actions to be kept separate.

The banking laws of Ohio do not contain such definite provisions in this regard as some other states, and from such discussions as have appeared in the decisions from

time to time in relation to the Ohio system of banking it would seem to appear that whatever interdepartmental transactions, assignments or transfers were made by an Ohio bank, it would in nowise affect the title to the property or money in the hands of the bank and the general law of set-off would still prevail, unless of course such transactions, assignments and transfers were made with the consent or by the agreement of the customer of the bank.

In the instant case, and that is true of all of these cases involving this question, the note and mortgage is the property of the bank and is now in the possession of the superintendent of banks as liquidator. The bank has never parted with the title to the note and mortgage, but on the contrary, has definitely reserved title, possession and control.

Suppose the superintendent of banks brought suit on this mortgage tomorrow. Could it be said that he could not maintain such action because he was not the proper party to maintain it? And if he may maintain the action, may not this plaintiff, who in such case would be the defendant, claim the right of set-off?

It is not intended in this opinion to overlook any consideration which may intervene. When this mortgage was given to the bank by the plaintiff the bank was not obliged to keep it. It could dispose of it as it saw fit and was under no obligation to the plaintiff to retain it. On the other hand, the plaintiff was under no obligation to keep any sum on deposit with the bank. He might never have a deposit and never therefore be in a position to claim an off-set, and the bank was not required to anticipate that possibly some time in the future he might have a deposit and might desire to claim an off-set. Counsel urged all these considerations upon the court at the time of the hearing, but it will be very readily seen that no reason appeared for giving them serious consideration in the present situation, because the bank not only never disposed of the plaintiff's mortgage, but on the contrary definitely bargained in the declaration of trust, and in the certificates as well, for the retention of both title and possession.

In this connection, attention ought to be called to a very interesting case in Pennsylvania entitled *In the Matter*

*of the U. S. Bank & Trust Company, et al.* This is a very late case only decided on May 22nd of this year, and in that case the Supreme Court of Pennsylvania holds that in the creation of a trust in a bank similar in character to the one under consideration here, and the issuance and sale of certificates thereunder, a valid title to the mortgage passed to the certificate holders, thus defeating the right of set-off.

I have not taken the time to examine the laws of Pennsylvania to see whether or not they are of such a character as to lend support to this decision. I am assuming for the purpose of this decision, that the laws of Pennsylvania in that particular do not differ from the laws of Ohio, and even with that assumption I find myself unable to go along with the decision in the Pennsylvania case for the very definite reason that in the case under consideration here, not only did no valid title pass to the certificate holder but it was specifically provided both in the declaration of trust and in the certificates themselves, that the title and control should remain in the bank; and so long as the title to these instruments remains in the bank I am convinced that the right of off-set is unimpaired.

We are not wholly without authority upon this question, although I know of but two cases aside from the Pennsylvania case—one in the state of Michigan and one in the state of Arkansas.

In the case of *Reichert, State Banking Commissioner*, v. *Fidelity Bank & Trust Co.*, 257 Michigan, 535, the Supreme Court of Michigan had before it the same question. In the state of Michigan the person desiring the set-off was at a greater disadvantage than he would be in Ohio because the statutes in Michigan made provision for certain preferences in favor of trust departments and commercial departments on the liquidation of the bank. It appears from the facts in the case that for some years the Paw Paw Savings Bank had kept a commercial account with the defendant bank and had occasionally borrowed money, and at the time of the closing of the bank in 1931 the Paw Paw Bank owed some $10,000.00 to the defendant and also had on deposit in the commercial account something over $9,000.00. It made claim for an off-set. It appears that when the note was

given it was allocated to the commercial department and thereafter transferred to the trust department where it remained until the bank went into liquidation.

It appears that the Paw Paw bank had no notice or knowledge of such action nor did they consent to it. The claim for set-off was refused by the superintendent of banks on the ground that if they allowed the set-off it would have the effect of depleting the assets in the trust department and be in violation of the laws requiring a segregation of securities in favor of that department. The question was a new one in the state of Michigan and there were no cases on the question in other jurisdictions. Such portion of the decision of the court as bears upon the question under consideration here, is as follows:—

"Although it has three departments, an institution like defendant is a single legal corporate entity and is so dealt with by the public. By deposit, the relation of creditor and debtor is created. By loan, the relation of creditor and debtor is created. In both instances the relation is between the corporation, not as a department of it, and the customer. The accounts are mutual, and each party is entitled to set-off against the other. * * *

"The effect of partial or no cross-departmental set-off should be considered. It would result in a receiver being compelled to pay dividends on a deposit, although in another department, he holds a note of the depositor which he cannot collect, and would force him to take legal action to subject dividends to the loan. Worse, it would enable the officers of an operating bank, by marks on a book, to transfer a loan to or from the department of deposit, and thereby to grant or deny the depositor a set-off, at their pleasure and to its advantage. The latter situation is intolerable.

"It is not a good excuse for such injustice and inequity to say that the customer is presumed to know of the department preferences, established by statute and to deal with the bank with reference to them. The customer has no power or duty to keep the books of the bank, to select the department to hold the loan, nor to keep it there, nor to transfer it back and forth between departments. He deals with the bank as an entity, which it is, and its internal business is not his concern. * * *

"We hold that the general right of set-off on mutual credits and debits exists between bank and customer regardless of the department in which they may be carried."

This case was decided by the Supreme Court of Michigan on the 4th day of April, 1932.

A still later case is that of *Taylor, Bank Commissioner*, v. *Arkansas Democrat*, decided by the Supreme Court of Arkansas on October 24, 1932, reported in 54 Southwestern Reporter and found in the issue of the weekly advance sheets of 54 S. W. Reporter, Second Series, of December 20, 1932. The first and second paragraphs of the syllabus of that case are as follows:

"Maker bank, which neither knew of nor consented to execution by defunct payee bank of participating certificates assigning interests in note, held not estopped to offset payee's indebtedness to it. (Crawford & Moses' Dig. 7796-7798.)

"Certificates of participation in bank loan held not to create express trust between buyer banks and seller bank entitling buyer banks to preference in assets of defunct seller bank (Acts 1927 1, subd. 5)."

The opinion of the court is of some length and I only desire to quote one paragraph of that opinion because it perfectly fits the facts in the present case.

"(1) The undisputed facts reflect that the $20,000 note which appellee owed the American Exchange Trust Company had not been negotiated in the manner required by Sections 7797 and 7798, Crawford & Moses' Dig. and that it was held intact by said bank when the commissioner took charge of the assets of the bank for liquidation. Appellant banks having failed to acquire an interest in the $20,000 note in accordance with the provisions, aforesaid, of the Negotiable Instruments Act, were and are in no position to challenge appellee's right to offset the bank's indebtedness to it against its indebtedness to said bank. There is nothing in the agreed statement of facts tending to show that appellee knew of or consented to an assignment of an interest in the $20,000 note it owed the bank by the execution of participation certificates therein to appellant banks, hence was not estopped to claim its right of set-off by an assignment of a part of the note in manner contrary to the Negotiable Instrument Act. In order to have deprived appellee of its right of set-off, the note must have been negotiated in accordance with the provisions of the Negotiable Instrument Act or else appellee must have assented to or acquiesced in the issuance of certificates of participation by said bank."

It occurs to the court therefore, that there can be no question of. the right of the plaintiff to be decreed an off-set.

One of these cases that is before the court, differs in an important particular from the others, and I have reference to the case of *Suder* v. *The Commercial Savings Bank & Trust Company*, No. 131711. In this case it appears from the evidence that the plaintiff on March 10, 1930, made to The Commercial Savings Bank & Trust Company, a note for $36,000.00, and upon the same date executed a mortgage on certain property to secure such note, and that there was retained by the bank at the time of the execution and delivery of the note and mortgage of the amount of such loan of $36,000.00, the amount of $3600.00, said amount being represented by a certificate of deposit payable to bank and held by the bank as a sort of compensating balance to be credited upon the note either at the time of the final payment thereof, or to be paid to the maker Suder if any sale or disposition of the note and mortgage was made by the bank. The plaintiff in his suit asks that the note and mortgage be referred to recite the actual amount received by the plaintiffs, or in lieu thereof, that they be credited with the amount of $3600.00 upon the note and mortgage.

The plaintiff Suder has this difference in his case. Under his arrangement with the bank he was obliged to leave $3600.00 on deposit and the bank was therefore definitely without power to so deal with his mortgage as to deprive him of his right of off-set, so that in the Suder case it can readily be seen that the bank could not do with the mortgage what it pleased, and the bank and every department of the bank was charged with knowledge of the conditions under which this deposit of $3600.00 was left with the bank.

It necessarily follows therefore, that the off-sets in all of these cases must be allowed. It may appear that in some instances dividends have been paid upon the deposits and this will have to be taken into consideration in determining the amount of these off-sets. Such adjustment as may be necessary in that particular, can be taken care of in the journal entries.

In this connection, I want to suggest further that I think the Banking Department ought to be charged with the duty of compiling a list of depositors who might, under this de-

cision, be entitled to off-sets so that such depositors may be notified of their rights. If it should chance that the decision of this court be overruled in the higher courts, then such a compilation would work no harm, while on the other hand if the decision of this court should be affirmed, then such compilation would afford other depositors similarly situated an opportunity to claim off-set. By virtue of the fact that the superintendent of banks is charged with the duty of liquidating the banks, in fairness to all concerned, the court is of the opinion that it is not improper to charge the superintendent with this obligation.

There is just one question left to be determined, and that is the rights of the holders of the participating certificates issued under the declaration of trust executed by the Commercial and Ohio Banks.

In the case of *Kruse, Executor* v. *Fulton*, No. 131287, Otto G. Ulmer was allowed to file an intervening petition on behalf of himself and all other holders and owners of certificates of participation in certain trusts in the Commercial Bank, and testimony and evidence was adduced by said Otto G. Ulmer and also by the superintendent of banks of the issues presented by said cross petition.

In the case of *Martin* v. *Fulton, et al*, No. 132851, which involved a mortgage of the plaintiffs having been transferred to what is known as Trust C-211, also known and designated as MI-2 on the records of the Ohio Bank, Henry M. Pingen, one of the owners and holders of certificates of participation in said trust was allowed and permitted to file an intervening petition on behalf of himself and all other owners and holders of certificates of participation in said trust, other than the Ohio Bank, and testimony and evidence was taken and offered by said Pingen and said superintendent of banks on the issues raised by such intervening petition.

Without arguing the question extensively, it occurs to the court that there are only two avenues of relief open to the certificate holders. The banks in which these trusts exist, are themselves holders of certificates of participation. The Ohio Bank, I am informed, owns a very considerable sum of the certificates in said Trust C-211, while the Commercial Bank is not such a large holder. The court is

of the opinion that these banks ought to be required to surrender and cancel certificates of participation which they hold in these several trusts, in an amount equal to the offsets which it may be necessary to allow against mortgages transferred to these trusts, to secure the principal and interest due on the certificates issued in said trusts, and that in the event the bank, whether it be the Commercial or the Ohio, does not hold sufficient of such certificates to cancel an amount equal to the amount of the off-sets allowed, the certificate holders should be subrogated to the rights of the holders of such claims against the bank with the right to have the dividends paid thereon by the superintendent of banks utilized in the payment of such participating certificates.

The court is without power to order assets of an amount equal to the off-sets to be delivered to the trust department by way of replacement, nor may the court make an order which will reach the securities deposited with the treasurer of state under the law requiring such a deposit insuring the faithful performance of its trust duties. I say this latter for the reason that the bank definitely disclaims any personal obligation in connection with these certificates.

In the Kruse case the contention is made that the bank guaranteed the certificates of participation. In the first place, the court is of the opinion that the evidence offered by the intervening petitioner to show any guarantee or intention to guarantee the certificates, absolutely fails in this respect. The most that can be said of the evidence is that it was an expression of an opinion on the part of the officers of the bank as to how they felt about the participating certificates and of their value as compared with Government bonds.

There is no evidence of any intention on the part of any of the officers of the bank to guarantee the certificates, for, had they desired to do so, it would have been a simple matter to endorse a written guarantee thereon. But aside from this the court is of the opinion that the bank had no power, either verbally or in writing, to guarantee these certificates, and that any acts of the officers of the bank committing the bank to such a guarantee would be *ultra vires* and void,

and had such guarantee been made it would not be enforcible against the superintendent of banks in charge of the liquidation of said bank.

In the case of *Reichert.* v. *Metropolitan Trust Company* decided by the Supreme Court of Michigan on March 2, 1933, wherein it was sought to hold the Receiver of the Metropolitan Trust Company on a written guarantee on bonds issued by said company, we quote briefly from the opinion of the court as follows:

"The trust company not having authority to guarantee the payment of these bonds, such guaranty is not enforcible against the receiver of the trust company. Those dealing with the trust company are presumed to have had notice of its lack of powers to guarantee the payment of the bonds: *Farmers & Mechanics' Bank* v. *Troy Bank*, 1 Doug. 457; *Knickerbocker* v. *Wilcox*, 83 Mich. 200; and consequently no estoppel arises against the receiver, upon such colorable contracts of guaranty."

See also *Perkins, et al* v. *Fuquay, et al*, decided by the Supreme Court of Florida, August 5, 1932, and reported in 143 Southern Reporter, page 323.

The claim is asserted in both the Kruse and Martin cases by the intervening petitioners, that the bank and superintendent in charge of the liquidation thereof, should be liable by reason of the fact that certain mortgages were withdrawn from these trusts shortly before the closing of the bank and sold and disposed of by the bank, and other mortgages substituted in lieu thereof. The declaration of trust under which the mortgages were placed in trust and the certificates of participation issued should be construed as an agreement between the bank and the several owners and holders of certificates of participation, and specifically provided that the bank should have the power at any time to withdraw mortgages from the trust and substitute other morgages in lieu thereof, so the mere withdrawal of mortgages, no matter for what purpose they were withdrawn, could not impose any liability on the bank or the superintendent, unless the evidence showed that the certificate holders, by reason of the conduct of the bank in withdrawing certain mortgages and replacing said mortgages by other mortgages, had suffered some specific loss due to the

actionable conduct of the bank or its officers, no right or claim would exist in the certificate holders to insist that the bank or the superintendent respond by reason of the mere fact of such withdrawal and substitution of mortgages, unless the bank or its officers perpetrated some fraud on the certificate holders in connection therewith.

The court has examined the evidence offered in connection with the withdrawal and substitution of mortgages in both the Kruse and Martin cases, and is unable to find where the evidence offered in said cases sustained the claim of the intervening petitioners in this regard.

Outside of the relief to the certificate holders which I have suggested above, I know of no other relief which may be accorded by the court in these cases. It may be possible for the certificate holders to bring some independent action against the officers and directors of the bank, but this is a matter to be determined by the certificate holders and not by this court.

Entries will be made by the court in these cases in accordance with this opinion, but the court suggests that counsel first prepare journal entries upon which they may agree, and the court will then make upon the court docket an appropriate entry. I suggest this method for the reason that the entries in these cases are rather likely to vary considerably.